36283, 36284.   ATLANTA GAS LIGHT COMPANY *v.*
BROWN (two cases).

DECIDED SEPTEMBER 20, 1956.

354

*Reed & Ingram*, for plaintiff in error.

*Claude M. Hicks, J. Douglas Henderson*, contra.

CARLISLE, J. ■ While we are fully aware of the beneficent and salutary rule, to which this court scrupulously adheres in proper cases, that ordinarily questions of diligence and negligence, including proximate cause, are for the jury, we also recognize it to be the duty of the court to determine those questions in clear, palpable, and indisputable cases. *Evans* v. *Georgia Northern R. Co.*, 78 *Ga. App.* 709, 712 (52 S. E. 2d 28), and cit.; and this latter rule is frequently enforced as a result of the necessary application of the proper rules of construction to pleadings. "It is an elementary rule of construction, as applied to a pleading, that it is to be construed most strongly against the pleader; and that if an inference unfavorable to the right of a party claiming a right under such a pleading may be fairly drawn from the facts stated therein, such inference will prevail in determining the rights of the parties." *Krueger* v. *MacDougald*, 148 *Ga.* 429 (1) (96 S. E. 867) ; *Slade* v. *Barber*, 200 *Ga.* 405, 412 (37 S. E. 2d 143) ; *McEntire* v. *Pangle*, 197 *Ga.* 414 (29 S. E. 2d 503).

"If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover." Code § 105-603.

From the petition, and under an application of the foregoing rules of law, it is apparent that admitting the truth of all the allegations of negligence attributed to the defendant, the plaintiff's son could have avoided the occurrence which resulted in his death by the exercise of ordinary care for his own safety after

he had, or in the exercise of ordinary care, should have, discovered the defendant's alleged negligence.

The plaintiffs' son is alleged to have been 20 years of age at the time of his death, and in the absence of an allegation to the contrary he will be presumed to have been mentally responsible, and to be as responsible as an adult is for his own safety (*Youngblood* v. *Henry C. Beck Co.*, 93 *Ga. App.* 451, 454, 91 S. E. 2d 796, and cit.; *Moore* v. *Seaboard Air Line R. Co.*, 30 *Ga. App.* 466, 118 S. E. 471; *Thomas* v. *Georgia Granite Co.*, 140 *Ga.* 459 (1), 79 S. E. 130) and an ordinarily prudent person in the possession of all of his faculties is certainly expected, in driving an automobile upon the highways and streets of today, to use his sense of sight, if not of hearing, to determine whether there is present any of those dangers upon the streets and highways which a person of ordinary intelligence would reasonably apprehend. See in this connection *Western & A. R. Co.* v. *Ferguson*, 113 *Ga.* 708, 713 (39 S. E. 306, 54 L. R. A. 802). The continual, if not continuous, necessity for making excavations in and along the streets and highways of today, and the concomitant strowing and piling of earth in and along the streets and highways for the purpose of laying and repairing water, gas, electrical, and sewerage mains, and the repair of the streets and highways themselves, is so common an occurrence as to be reasonably anticipated by us all, especially those of us who drive or ride in motor vehicles. Moreover, common prudence requires that the drivers of motor vehicles be constantly vigilant in their lookout ahead for any and all objects and obstructions which may impede their progress along the streets and highways. The street upon which the plaintiffs' son met his death is alleged to have been a paved one in the City of Marietta 23 feet wide. Such a street is obviously wide enough for the passage of two lanes of traffic in the absence of any allegation to the contrary. The plaintiffs' son is alleged to have been traveling at a speed of 25 miles per hour southward upon this street at 8 a.m. on the morning of January 25, 1955, and as the sun rose, on that date at 6:59 a.m., in the absence of allegations to the contrary, we will presume that the day was lighted and clear and that there was ordinary visibility along the street at the time of the occurrence which resulted in the death of the plaintiffs' son. It is alleged that the defendant had piled dirt

almost over the entire street in such a manner as to cause the truck which the plaintiffs' son was driving to be wrecked and pin him beneath it. It is alleged that in addition to piling dirt in the street, the defendant had, for a distance of 100 feet north of the point of impact accumulated loose dirt on the street which caused the right wheels of the truck to ride higher than the left wheels as the plaintiffs' son continued in his right-hand lane of the street, and that this loose dirt caused the truck to skid into "the dirt pile" and to turn over into the excavation alongside the street on his right-hand side. It is further alleged that there was nothing in the street to warn the plaintiffs' son of these conditions and that 400 feet north of the excavation and dirt pile there was a curve which obscured his view of the dirt piled in the street and the excavation. Construing these allegations together and against the pleaders, the curve was 400 feet north of the conditions existing in the street and for a distance of 400 feet the conditions in the street were necessarily within his view, as it is nowhere alleged that he could not see for a distance of 400 feet ahead of him or that the conditions in the street were obscured by optical illusion or otherwise. It is not alleged that the plaintiffs' son at any point before the truck skidded and struck the dirt pile reduced his speed of 25 miles per hour and we will presume in the absence of such an allegation that he continued at that speed unabated. As it is alleged that he traveled the last 100 feet of the 400 feet from the curve over the loose dirt on the pavement we must assume, since his right wheels were riding higher than his left wheels in the right lane, that he was absolutely aware of the presence of the accumulated dirt for that distance and since the right wheels were riding higher than the left ones that there was less dirt to the left of his path of travel. No reason is given why he was unable to turn aside into the left lane of the street to avoid the pile of dirt which he struck. No reason is assigned why he was unable to stop the truck after he necessarily saw the obstructions in the street.

From all this the only reasonable conclusion to which we can come is that the plaintiffs' son was the author of his own misfortune in ploughing headlong at an unabated speed into a clearly visible obstruction in the street, when in the exercise of ordinary prudence he could have avoided the obstruction by stopping his

vehicle or by turning aside to avoid striking it. Since under the rules of law stated above, the plaintiffs' son, were he alive, could not recover, his parents, the plaintiffs, may not. *Youngblood* v. *Henry C. Beck Co.*, 93 *Ga. App.* 451, 454. Accordingly, the trial court erred in overruling the defendant's general demurrers to the petitions.

*Judgments reversed. Gardner, P. J., and Townsend, J., concur.*