A91A1040. SULLENBERGER v. GRAND UNION COMPANY.
(410 SE2d 381)

SOGNIER, Chief Judge.

Douglas Sullenberger brought suit against Grand Union Company d/b/a The Big Star Grocery and Selig Enterprises, Inc. seeking damages for injuries he incurred when he slipped and fell in a parking lot owned by Selig Enterprises and leased by Grand Union for customers at its Big Star grocery store. The trial court granted Grand Union's motion for summary judgment, and Sullenberger appeals.

Appellant's fall occurred at approximately 8:00 p.m. on November 9, 1987. Appellant stated in his deposition that after purchasing a cart full of groceries at appellee's store, he left and pushed the cart himself up an incline in the parking lot to his car. Appellee does not provide employees to carry groceries for customers. Appellant testified he positioned his cart so that its front was heading downhill, backed it to the rear of his car, and braked the cart by placing one foot behind a wheel. After all but the final bag of groceries had been loaded in his car, appellant moved his foot from behind the wheel in order to position the last bag further into his car. He then turned to see the cart he had released rolling down the drive lane of the parking lot toward a trafficked lane in front of the grocery store.

Appellant, who is an attorney, stated that he dashed after the cart "thinking proximate cause," but because the slope of the drive-

way or the cart's wheels were causing it to angle to the left, appellant did not chase directly after it. Instead, he decided that he was "going to chance" trying to "head it off" by deliberately cutting across an area of the lot he was aware had been designed for and contained parked cars. Appellant admitted that he could not recall what he was watching as he ran and that he did not know what he was looking at, other than the fleeing grocery cart, as he cut past a parked car. A parking bumper or curb, which appellee's expert testified was "required by the City," was positioned between a handicapped parking space and a cart return area. Appellant stated, "I don't know for a fact that I tripped on the curb. I know that the curb was right behind me and that was the path I took, but I don't know for a fact because I wasn't watching my feet every second that I was running." After his fall he saw a dark puddle of liquid which he could not identify but stated that "as opposed to a slip or a trip, it seems to me it had to have been a trip because I fell so far forward from where I was." The inadequacy of the lighting in the parking lot was one of the instances of negligence alleged in appellant's complaint. Appellee's expert testified that a standard light with four four-hundred-watt high intensity lights was installed directly in front of the store where the fall occurred. When appellant was questioned about the lighting, he responded, "Was lighting a factor? I don't know. I don't know if it would have made a difference if there had been more light there or not. I can't say."

Appellant contends the trial court erred by granting appellee's motion for summary judgment. "The utilization of dividers [or concrete bumpers] in parking lots does not in itself constitute negligence. [Cits.]" *Townsend v. Central Parking*, 118 Ga. App. 538, 539 (164 SE2d 287) (1968). See *McHugh v. Trust Co. of Ga.*, 102 Ga. App. 412 (116 SE2d 512) (1960). Appellant argues these cases are distinguishable here because they did not involve a situation where the plaintiff's attention was distracted by vehicular traffic and by a sudden emergency caused by a runaway cart. However, the evidence here establishes that it was the result of appellant's own negligence in releasing his control over a cart he had positioned to head downhill on a slope that appellant had to run across the parking lot after his cart to prevent it from harming anyone. Thus, any "distraction" posed by the fleeing cart "was self-induced by a possible emergency situation which was entirely of [appellant's] own creation. ' "One valid line of distinction existing in the so-called 'distraction' cases concerns the cause of the distraction. Where the distraction is self-induced the plaintiff can no more take the benefit of it to excuse his lack of care for his own safety than one who creates an emergency can excuse himself because of its existence." ' [Cit.]" *Gray v. Alterman Real Estate Corp.*, 196 Ga. App. 239, 240 (396 SE2d 42) (1990).

The record also establishes that although appellant deliberately chose to risk cutting across an area marked for and occupied by parked cars, see *Townsend*, supra, he admittedly ran without watching where he was going. Appellant's own testimony thus establishes that he would not have seen the parking curb. " 'It is generally incumbent upon one to use his eyesight for the discovering of any obstruction that may have been placed in the way. (Cits.)' [Cit.]" *Gray*, supra at 240-241. Finally, appellant's own testimony reveals that he did not know that the parking curb caused his fall, see *Batts v. Bozeman & Son*, 196 Ga. App. 614, 615-616 (396 SE2d 505) (1990), nor did he adduce any evidence that different lighting would have prevented his fall.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. [Cit.] A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Applying this standard to the facts in the case sub judice, appellee was entitled to summary judgment as a matter of law, and the trial court did not err by so ruling.

*Judgment affirmed. Birdsong, P. J., Pope, Beasley, Cooper and Andrews, JJ., concur. Carley, P. J., concurs in the judgment only. McMurray, P. J., dissents.*

McMurray, Presiding Judge, dissenting.

The evidence upon which the trial court based the grant of summary judgment showed that plaintiff shopped at the Big Star store at Ansley Mall in Atlanta on the evening of November 9, 1987, exiting the store at about 8:00 p.m. with a full cart of groceries. Big Star does not provide employees to assist customers in transferring their groceries from the store to their cars, but does furnish carts for that purpose. Plaintiff pushed his cart up the inclined parking lot in front of the store, backed the cart to the rear of his car, opened the trunk and

began unloading bags of groceries into it. Plaintiff kept the cart in place by putting his foot under one wheel, but as he reached for the last bag the cart began rolling down the parking area, veering to the left and "bumping" and "hopping." As an attorney, plaintiff's first thought was that the cart "careening down the hill" would be the proximate cause of injuring someone.

Plaintiff chased after the cart "as fast as [he could] run" as it gathered speed, trying to catch it before it crashed into cars or hit a pedestrian. To "head it off" he cut through a parking lane and tripped over a three-to-four inch divider curb or bumper positioned between a handicapped parking space and the cart return area. Although he did not recall exactly what happened, he remembered "flying and landing on" his left elbow, breaking his arm in two places below the elbow. There were no such raised obstructions in the area where plaintiff parked his car and, while he was not looking at his feet, his impression was that he tripped over the bumper rather than slipped because his body was "angled out" when he went down.

The fact that plaintiff could not say "if it would have made a difference if there had been more light or not" does not obviate issues of location of the obstruction, observability to the plaintiff and maintenance of the area by defendants. Construing the evidence most favorably to plaintiff as the party opposing the motion for summary judgment, it could be concluded that the parking lot was not adequately lighted and that the obstruction over which plaintiff fell was obscured by darkness as well as the parked cars around it. Thus, unresolved questions of fact are presented as to whether the bumper constituted an open and obvious obstruction, whether this area was inadequately lighted and plaintiff was prevented from observing the curb or whether his view was blocked by a parked car, which should have been reasonably anticipated by Big Star as occupier of the premises.

The controlling principles of law here are as follows: "Plaintiff was an invitee of defendant. An owner or occupier of retail premises is not an insurer of the safety of invitees [cit.] but a duty rests upon it to exercise ordinary care to keep the premises safe for persons coming thereon by its invitation. [Cit.] An invitee may rely upon the proper discharge of this duty by the owner or occupier and is not, as a matter of law, guilty of negligence in failing to discover the existence of a patent defect in the premises which could render it unsafe for persons coming upon the premises. [Cit.] However, the customer-invitee must make use of all of his or her senses in a reasonable measure — amounting to ordinary care, in discovering and avoiding those things that might cause injury to him. It is his duty to exercise ordinary care to observe such obstructions as an ordinarily prudent person would, under normal conditions, expect in the . . . place of business in which

he is an invitee. [Cit.]" *Sears, Roebuck & Co. v. Chandler*, 152 Ga. App. 427, 428 (1) (263 SE2d 171) (1979).

"The decisive issues are: '(1) fault on the part of [Big Star], and (2) ignorance of the danger on the part of the [plaintiff]. (Cit.)' [Cit.] With regard to the first issue: 'The question is whether these dividers [or bumpers] expose an invitee to a foreseeable unreasonable risk of harm under the totality of the circumstances in each particular case. In making this determination, the court must consider the utility of the dividers with respect to the type of construction, location, observability to invitees and the state of maintenance.' [Cit.]" *Shackelford v. DeKalb Farmer's Market*, 180 Ga. App. 348, 349-350 (1) (349 SE2d 241) (1986). With regard to the second issue, "if the lack of lighting prevents the injured party from discovering a dangerous condition of which the owner [or occupier] but not the injured party should be aware, liability may be imposed. [Cit.]" *Evans v. Parker*, 172 Ga. App. 416, 417 (2) (323 SE2d 276) (1984).

Moreover, "[t]he doctrine that a plaintiff may be excused from the otherwise required degree of care because of circumstances creating an emergency situation of peril is well recognized. From this stems the rule that a lesser degree of prudence may be sufficient to constitute ordinary care where there are circumstances causing stress or excitement. [Cit.] The doctrine is further broadened to cover situations where the plaintiff's attention is distracted by a natural and usual cause, and this is particularly true where the distraction is placed there by the defendant or where the defendant in the exercise of ordinary care should have anticipated that the distraction would occur. . . . One valid line of distinction existing in the so-called 'distraction' cases concerns the cause of the distraction. Where the distraction is self-induced the plaintiff can no more take the benefit of it to excuse his lack of care for his own safety than one who creates an emergency can excuse himself because of its existence. Where the distraction comes from without, and is of such nature as naturally to divert the plaintiff, and also of such nature that the defendant might naturally have anticipated it, the result is different. [Cit.]" *Redding v. Sinclair Refining Co.*, 105 Ga. App. 375, 377 (2), 378-379 (124 SE2d 688) (1962). See *Stenhouse v. Winn Dixie Stores*, 147 Ga. App. 473 (249 SE2d 276) (1978).

"This court thoroughly discussed the two lines of cases regarding the 'plain view' doctrine and the 'distraction' rationale in *Stenhouse v. Winn Dixie Stores*, 147 Ga. App. 473 [supra] where we held that the issue could not be determined as a matter of law and was a question for the jury. We reaffirmed the general rule that issues of negligence, diligence, contributory negligence, proximate cause, and the exercise of ordinary care for one's own protection are ordinarily for the jury [cit.] and are usually incapable of summary adjudication and

should be resolved by trial. [Cit.]" *Sears, Roebuck & Co. v. Chandler*, 152 Ga. App. 427, 430, supra.

In my view, the "distraction theory" is applicable here. "The evidence authorized a finding of [plaintiff's] distraction 'by reason of present or reasonably to be anticipated dangers' resulting from being subjected to extremely close proximity to vehicular traffic [while trying to prevent the grocery cart's precipitous flight]." *Robinson v. Western Intl. Hotels Co.*, 170 Ga. App. 812, 816 (1) (318 SE2d 235) (1984).

" '[I] cannot say that under these circumstances that a conclusion, as a matter of law, is demanded that the plaintiff should have had a full appreciation of the danger, and that in the exercise of ordinary care (he) should have avoided the injury to (himself). This, [I] think, is a question for the jury.' *Firestone Service Stores v. Gillen*, [58 Ga. App. 782, 787 (199 SE 853)]." *Robinson v. Western Intl. Hotels Co.*, 170 Ga. App. 812, 813 (1), 815, supra. Accordingly, I respectfully dissent.

DECIDED SEPTEMBER 13, 1991.

*Weinstock & Scavo, Michael Weinstock, Michael J. Zenner*, for appellant.

*Sullivan, Hall, Booth & Smith, Alexander H. Booth, Jeffrey T. Wise, Joe O'Connor*, for appellee.