S97G0065. ROBINSON v. KROGER COMPANY.

(493 SE2d 403)

BENHAM, Chief Justice.

Invitee Henrietta Robinson sustained an injury to her knee in a Kroger supermarket when she slipped on a foreign substance on the store's floor and fell. The trial court granted summary judgment to Kroger in Mrs. Robinson's negligence action against the store, and the Court of Appeals affirmed, ruling that the proximate cause of Mrs. Robinson's fall was her failure to exercise ordinary care for her personal safety. *Robinson v. Kroger Co.*, 222 Ga. App. 711 (476 SE2d 29) (1996). We granted certiorari to examine "the proper standard for determining whether the plaintiff in a 'slip and fall' premises liability case has exercised ordinary care sufficient to prevail against a motion for summary judgment." We reverse the judgment of the Court of Appeals and hold that an invitee's failure to exercise ordinary care for personal safety is not established as a matter of law by the invitee's admission that she did not look at the site on which she subsequently placed her foot. Rather, the issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation.

1. The case law which has developed over the years in Georgia "slip and fall" premises liability appeals is pendulum-like. In 1980,

perceiving a tendency "to drift toward a jury issue in every 'slip and fall' case[,]," this Court granted a writ of certiorari and engaged in an analysis of the topic in *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980). The court reiterated there, among other things, the statutory principle that an owner or occupier of land is charged with exercising ordinary care to keep the premises safe (OCGA § 51-3-1), and the fundamental basis for an owner or occupier's liability — that party's superior knowledge of the hazard encountered by the plaintiff. The court stated that an invitee might recover for personal injury suffered in a slip and fall "only 'when the perilous instrumentality is known to the owner or occupant and not known to the person injured. . . .' " Id. at 622. The *Alterman* court pointed out that an invitee must exercise ordinary care for the invitee's personal safety, using all senses in reasonable measure to discover and avoid things which might cause the invitee harm. Id. at 622-623. The court concluded that "to state a cause of action . . . the plaintiff must show (1) that the defendant had actual or constructive knowledge of the foreign substance and (2) that the plaintiff was without knowledge of the substance or for some reason attributable to the defendant was prevented from discovering the foreign substance." Id. at 623.[1]

Since 1980, the decision in *Alterman Foods* has been cited repeatedly in appellate court decisions in "slip and fall" premises liability cases, and defendants have successfully mounted two-pronged attacks against plaintiffs by asserting that (1) the defendant lacked the requisite actual or constructive knowledge of the hazard, and (2) the plaintiff had actual knowledge of the hazard equal or superior to that of the defendant or, would have had equal or superior knowledge had the plaintiff exercised ordinary care for personal safety. In light of the requirement that plaintiff establish both the defendant's knowledge and the lack of plaintiff's knowledge, a defendant was entitled to summary judgment, the appellate courts ruled, when *either* the first or second *Alterman* prong was not established. Weighted down by the conjunctive *Alterman* analysis, the pendulum made a dramatic swing in the other direction as it became the rare case which escaped summary adjudication.

For several years after the *Alterman* decision, the focus of the

---

[1] Well-known commentators on the state of tort law in Georgia, Cynthia Trimboli Adams and Charles R. Adams III, noted in their 1988 annual review of Georgia appellate tort opinions that "It is not too much to state that [the *Alterman* decision] is to Georgia slip-and-fall jurisprudence what *Erie R. Co. v. Tompkins* [,304 U. S. 64 (58 SC 817, 82 LE 1188) (1938)] is to federal diversity law." Adams & Adams, Torts, 40 Mercer L. Rev. 377, 389 (1988). See also *Piggly Wiggly Southern v. Weathers*, 216 Ga. App. 12, 13, n. 1 (453 SE2d 74) (1994), where the Court of Appeals described *Alterman* as "a landmark decision . . . which substantially redefined the law governing slip-and-fall actions."

appellate opinions was on the first prong, i.e., the owner/occupier's knowledge of the existence of the hazard which caused harm to the invitee/plaintiff. Where a defendant had no actual or constructive knowledge of the hazard, summary judgment in favor of the defendant was appropriate since the plaintiff could not establish that the defendant had knowledge of the hazard superior to that of the invitee. See, e.g., *Kenny v. M & M Supermarket*, 183 Ga. App. 225 (358 SE2d 641) (1987); *DeGracia v. Huntingdon Assoc.*, 176 Ga. App. 495 (1) (336 SE2d 602) (1985); *Player v. Bassford*, 172 Ga. App. 135 (322 SE2d 520) (1984). Few cases extended the analysis beyond the "first prong" of *Alterman*; those which did and which concluded that the owner/occupier was entitled to summary judgment did so because the invitee had admitted knowledge of the hazardous condition and, with full appreciation of the danger, had chosen a course of conduct which resulted in injury as a result of the hazardous condition. *Lindsey v. J. H. Harvey Co.*, 213 Ga. App. 659 (445 SE2d 810) (1994) (plaintiff fell on wet floor after companion had warned plaintiff of the floor's wet condition); *Lea v. American Home Equities*, 210 Ga. App. 214 (435 SE2d 734) (1993) (plaintiff had seen warning signs and knew that carpet on which she fell was wet); *Bloch v. Herman's Sporting Goods*, 208 Ga. App. 280 (430 SE2d 86) (1993) (plaintiff who consciously and deliberately put her foot in a puddle of water surrounded by ice in freezing temperatures knew risk of puddle being icy); *Hudson v. Quisc, Inc.*, 205 Ga. App. 840 (424 SE2d 37) (1992) (plaintiff knew floor's condition, having earlier slid but not fallen in the vicinity of where she fell); *Moore v. Service Merchandise*, 200 Ga. App. 463 (408 SE2d 480) (1991) (plaintiff who walked through puddles and fell had previously observed puddle formation and altered his conduct so as not to walk through them); *Thomson v. Sears Roebuck & Co.*, 196 Ga. App. 801 (397 SE2d 151) (1990) (plaintiff saw 4′ x 5′ x 5″ hazard from 20 feet away and tripped over it while trying to squeeze past it); *Dyer v. Joe Rigatoni's of Atlanta*, 191 Ga. App. 473 (382 SE2d 193) (1989) (invitee attending New Year's Eve party at a restaurant decorated with streamers knew of the presence of the hazard (streamers)); *Gateway Management Co. v. Sutton*, 189 Ga. App. 296, 298 (375 SE2d 462) (1988) (plaintiff who had complained about the presence of construction debris on apartment complex's grounds and who had just walked through debris-strewn area in which she fell "had intimate knowledge of the risk . . . [and] chose to assume that risk. . . ."). In each case, the evidence was undisputed that the plaintiff had knowledge of the hazard equal to or greater than that of the owner/occupier, making it impossible for the plaintiff to prove that the owner/occupier had the superior knowledge necessary for the plaintiff to prevail. The plaintiff's behavior on each of these occasions constituted "voluntary negligence," classified by the Second

Restatement of Torts as a "type" of contributory negligence: "an intentional and unreasonable exposure of [the plaintiff] to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know. . . ." Restatement of Law 2d, Torts, § 466 (a).

When the injured invitee attempted to explain that he fell due to a hazard of which he was not aware, the focus of the appellate analysis shifted from the plaintiff's voluntary exposure of self to the hazard to another aspect of the plaintiff's negligence — the plaintiff's purported failure to employ all senses in a reasonable measure to discover and avoid that which might cause personal injury.[2] Because either of the two prongs of *Alterman Foods* was sharp enough to impale a plaintiff's case, resolution of a defendant's knowledge of the hazard's existence was oftentimes pretermitted in favor of an inquiry as to whether the injured plaintiff had fulfilled the invitee's duty to exercise ordinary care for personal safety. In *Smith v. Wal-Mart Stores*, 199 Ga. App. 808 (406 SE2d 234) (1991), it was determined that an invitee who did not see the hazard which caused the fall had failed, as a matter of law, to exercise the requisite ordinary care for personal safety when the invitee admitted he/she would have seen the hazard had the invitee been looking at the floor, and the invitee presented no evidence that the store was responsible for the invitee's failure to see the hazard. Thereafter, plaintiffs were repeatedly rebuffed based upon their admission that they would have seen the hazard had they been looking at the site where they placed their foot. See, e.g., *Piggly Wiggly Southern v. James*, 225 Ga. App. 846 (485 SE2d 223) (1997); *Nails v. Food Lion*, 221 Ga. App. 405 (471 SE2d 327) (1996) wherein it was held that "Nails' apparent failure to watch where she was walking forecloses her recovery. . . ."; *Baker v. Winn Dixie*, 219 Ga. App. 513 (465 SE2d 710) (1995); *Bruno's v. Pendley*, 215 Ga. App. 108 (449 SE2d 637) (1994); *Boykin v. North*, 218 Ga. App. 435 (461 SE2d 598) (1995); *Vermont American Corp. v. Day*, 217 Ga. App. 65, 67 (456 SE2d 618) (1995); *Piggly Wiggly Southern v. Weathers*, 216 Ga. App. 12 (453 SE2d 74) (1995); *Moore v. Winn Dixie Stores*, 214 Ga. App. 157 (2) (b) (447 SE2d 122) (1994); *J. H. Harvey Co. v. Kinchen*, 213 Ga. App. 868 (446 SE2d 218) (1994); *Winn Dixie v. Carroll*, 212 Ga. App. 234 (441 SE2d 432) (1994); *Minor v. Super Discount Markets*, 211 Ga. App. 123 (438 SE2d 384) (1993); *J. H. Harvey*

---

[2] Comment (g) to Section 466 of the Second Restatement of Laws, Torts, describes as "negligence of inadvertence" or "casual negligence," a plaintiff's "failure to pay reasonable attention to his surroundings so as to discover the danger created by the defendant's negligence, or to exercise reasonable competence, care, diligence, and skill to avoid the danger when it is perceived, or to make such preparations as a reasonable man would regard as necessary to enable him to avoid a possible future danger."

*Co. v. Johnson*, 211 Ga. App. 809 (440 SE2d 548) (1994); *Foodmax v. Terry*, 210 Ga. App. 511 (436 SE2d 725) (1993); *Jester v. Ingles Market*, 206 Ga. App. 327 (425 SE2d 323) (1992). But see *Chaves v. Kroger Co.*, 213 Ga. App. 348 (444 SE2d 606) (1994) (the evidence did not conclusively show the invitee failed to exercise ordinary care for personal safety where the invitee did not admit he could have seen the hazard had he been looking). In the case at bar, when the invitee explained that the view of the site of the hazard was obstructed by the opaque roof of a produce bin, it was held that the invitee's placement of a foot on the floor at a site not able to be seen constituted, as a matter of law, a failure to exercise ordinary care for personal safety. *Robinson v. Kroger Co.*, supra, 222 Ga. App. at 712. At least one appellate decision has held that an invitee failed to exercise ordinary care for personal safety by failing to look at the floor even though the invitee did not admit he would have seen the hazard had he looked at the floor. *Colevins v. Federated Dept. Stores*, 213 Ga. App. 49 (3) (443 SE2d 871) (1994) (invitee speculated that the foreign substance's color would have prevented it from being seen even if the invitee had looked at the floor). By foregoing a resolution of the owner/occupier's knowledge of the hazard in favor of a holding based on the determination that an invitee who did not see a hazard should have seen it in the exercise of ordinary care for personal safety, the courts, in effect, ruled as a matter of law that the invitee had knowledge of the hazard equal to or greater than that of the owner/occupier without knowing the extent of the latter's knowledge, and implicitly held that an invitee's duty to exercise ordinary care in looking where one is going is paramount to an owner/occupier's duty to exercise reasonable care in inspecting and keeping the premises safe for invitees.

We granted a writ of certiorari to examine the appellate decisions which have as their crux a determination as a matter of law that an invitee failed to exercise ordinary care for personal safety. As a group, these rulings are suspect for several reasons. First, by routinely adjudicating as a matter of law questions of the plaintiff's and defendant's negligence, proximate cause, and the exercise of ordinary care, these decisions have made commonplace what is, in reality, an unusual circumstance in tort law, since

> [a]s a general proposition issues of negligence, contributory negligence and lack of ordinary care for one's own safety are not susceptible of summary adjudication . . . but should be resolved by trial in the ordinary manner. [Cit.] The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable. [Cit.]

*Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 237 (227 SE2d 336) (1976). See also *Thompson v. Crownover*, 259 Ga. 126 (5) (381 SE2d 283) (1989); *Wynne v. Southern Bell Tel. &c. Co.*, 159 Ga. 623 (2) (126 SE 388) (1925); and *Brown v. Carlisle*, 214 Ga. App. 483, 484 (448 SE2d 256) (1994) (where the court noted that the issue of a plaintiff's exercise of due care for personal safety is ordinarily a question for the jury, but "may be summarily adjudicated where the plaintiff's knowledge of the risk is clear and palpable"). Where reasonable minds can differ as to the conclusion to be reached with regard to questions of whether an owner/occupier breached the duty of care to invitees and whether an invitee exercised reasonable care for personal safety, summary adjudication is not appropriate. *Pound v. Augusta National*, 158 Ga. App. 166 (279 SE2d 342) (1981).

Second, these decisions have placed in the limelight an invitee's duty to exercise reasonable care for personal safety and, in so doing, have relegated to the shadows the duty owed by an owner/occupier to an invitee. One who owns or occupies land and "by express or implied invitation, induces or leads others to come upon his premise for any lawful purpose, . . . is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. While not an insurer of the invitee's safety, the owner/occupier is required to exercise ordinary care to protect the invitee from unreasonable risks of harm of which the owner/occupier has superior knowledge. *Lau's Corp. v. Haskins*, 261 Ga. 491 (1) (405 SE2d 474) (1991). The owner/occupier owes persons invited to enter the premises a duty of ordinary care to have the premises in a reasonably safe condition and not to expose the invitees to unreasonable risk or to lead them into a dangerous trap. *Madaris v. Piggly Wiggly Southern*, 205 Ga. App. 405 (1) (422 SE2d 273) (1992). See also *Young v. Wal-Mart Stores*, 209 Ga. App. 199 (433 SE2d 121) (1993). The owner/occupier is not required to warrant the safety of all persons from all things, but to exercise the diligence toward making the premises safe that a good business person is accustomed to use in such matters. *Alterman Foods v. Ligon*, supra, 246 Ga. at 624. This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises. *Tassen v. Waffle House*, 221 Ga. App. 755 (472 SE2d 545) (1996); *Cole v. Cracker Barrel*, 210 Ga. App. 488 (436 SE2d 704) (1993); *Barksdale v. Nuwar*, 203 Ga. App. 184 (416 SE2d 546) (1992); *Begin v. Ga. Championship Wrestling*, 172 Ga. App. 293 (322 SE2d 737) (1984), all of which cite Prosser, Law of Torts (4th ed.), p. 422, § 61.

By encouraging others to enter the premises to further the owner/occupier's purpose, the owner/occupier makes an implied representation that reasonable care has been exercised to make the place safe for those who come for that purpose, and that representation is the basis of the liability of the owner/occupier for an invitee's injuries sustained in a "slip-and-fall." Prosser, Law of Torts (4th ed.), p. 422, § 61; *Begin v. Ga. Championship Wrestling*, supra, 172 Ga. App. at 294. An invitee who responds to the owner/occupier's invitation and enters the premises does so pursuant to an implied representation or assurance that the premises have been made ready and safe for the invitee's reception, and the entering invitee is entitled to expect that the owner/occupier has exercised and will continue to exercise reasonable care to make the premises safe. Id. It is in this light that an invitee's exercise of ordinary care for personal safety must be examined.

An invitee is charged with exercising ordinary care for personal safety and using ordinary care to avoid the effect of the owner/occupier's negligence after that negligence becomes apparent to the invitee or in the exercise of ordinary care the invitee should have learned of it. In the exercise of ordinary care, the invitee must use all senses to discover and avoid hurtful things. *Alterman Foods v. Ligon*, supra, 246 Ga. at 623. " 'The established standard is whether, taking everything into account, the act is one which the common sense of mankind pronounces want[s] of such prudence as the ordinarily careful person would use in a like situation.' " *Wynne v. Southern Bell Tel. &c. Co.*, supra, 159 Ga. at 629. The invitee is not bound to avoid hazards not usually present on the premises and which the invitee, exercising ordinary care, did not observe (*King Hardware Co. v. Teplis*, 91 Ga. App. 13, 15 (84 SE2d 686) (1954)), and the invitee is not required, in all circumstances, to look continuously at the floor, without intermission, for defects in the floor. *Food Giant v. Cooke*, 186 Ga. App. 253 (2) (366 SE2d 781) (1988); *Fletcher v. Family Center*, 169 Ga. App. 376 (2) (312 SE2d 856) (1983); *Chotas v. J. P. Allen & Co.*, 113 Ga. App. 731 (149 SE2d 527) (1966). See also *Amear v. Hall*, 164 Ga. App. 163 (2) (296 SE2d 611) (1982) ("[A]n invitee is not obliged to inspect the premises to discover latent defects nor even to observe patent defects. [Cit.]"); *Ellington v. Tolar Constr. Co.*, supra, 237 Ga. at 238 ("looking continuously in all directions is not required in all circumstances [to exercise ordinary care for personal safety]"), and *Chaves v. Kroger Co.*, supra, 213 Ga. App. 348. The invitee "is not barred of a recovery simply because by extreme care on his part it would have been possible for him to have discerned the articles negligently left in the aisles or passageways customarily used by the store patrons at the merchant's tacit invitation." *King*

*Hardware Co. v. Teplis*, supra, 91 Ga. App. at 15.[3] What constitutes a reasonable lookout depends on all the circumstances at the time and place. *Ellington v. Tolar Constr. Co.*, supra, 237 Ga. at 238.

Third, the "plain view" doctrine has undergone radical transmutation in recent appellate decisions. The doctrine is "that one is under a duty to look where he is walking and to see large objects in plain view which are at a location where they are customarily placed and expected to be. . . ." *Stenhouse v. Winn Dixie Stores*, 147 Ga. App. 473, 474 (249 SE2d 276) (1978). It originally was applied to a "clearly visible" pile of dirt in the road in *Atlanta Gas Light Co. v. Brown*, 94 Ga. App. 351 (94 SE2d 612) (1956), and has since been applied to a display of merchandise stacked on the floor near a customer service island (*Carr v. Sears, Roebuck & Co.*, 226 Ga. App. 768 (487 SE2d 415) (1997)); a broom in a grocery store (*McCrary v. Bruno's*, 219 Ga. App. 206 (464 SE2d 645) (1995); a common defect in pavement (*Papera v. TOC Retail*, 218 Ga. App. 777 (463 SE2d 61) (1995); *Piggly Wiggly Southern v. Bennett*, 217 Ga. App. 496 (458 SE2d 138) (1995)); a box containing boxes of trash bags in a store aisle (*Vermont American Corp. v. Day*, supra, 217 Ga. App. 65); a 2′ x 2′ x 5″ bread tray placed in a grocery store aisle (*Ramirez v. Kroger Co.*, 207 Ga. App. 830 (429 SE2d 311) (1993)); a 12″ x 18″ x 5 1/2″ box of canned goods in a grocery store aisle (*Riggs v. Great A & P Tea Co.*, 205 Ga. App. 608 (423 SE2d 8) (1992)); and a 4 1/2′ x 2′ x 5 1/2′ merchandise transporter in a grocery store aisle (*Kres v. Winn-Dixie Stores*, 183 Ga. App. 854 (360 SE2d 415) (1987). However, it has been used in such a manner as to remove any reasonable limits on its application when it has repeatedly been held that a hazard which was not seen by the invitee before the fall but which could have been seen by the invitee had the invitee looked at the floor is a "plainly visible defect" in "plain view," and the failure of the invitee to see such a hazard bars recovery under the "plain view" doctrine. See, e.g., *McDonald's Restaurants of Ga. v. Banks*, 219 Ga. App. 667, 672 (466 SE2d 240) (1995) (Andrews, J., dissenting); *Piggly Wiggly Southern v. Brown*, 219 Ga. App. 614, 619 (468 SE2d 387) (1995) (Andrews, J., dissenting); and the cases cited therein. See also cases wherein the appellate court ruled that, as long as the invitee's view was not obstructed, a hazard, no matter its size, was in "plain view" and precluded recovery if the hazard could have been seen had the invitee looked at the ground. E.g., *Steele v. Rosehaven Chapel*, 223 Ga. App. 523 (478 SE2d

---

[3] Rulings that terminate a plaintiff's case in favor of the defendant because the plaintiff did not observe the hazard before the fall, but could have seen it had the plaintiff been looking at the floor relegate a business patron to licensee status by requiring the patron to be on the alert to discover defects. The business patron is an invitee who is not burdened so onerously.

596) (1996) (lone step at exit of funeral home); *Wiley v. Family Dollar Store*, 208 Ga. App. 461 (430 SE2d 839) (1993) (a one-inch seam between asphalt ramp leading to store and sidewalk); *Emory Univ. v. Duncan*, 182 Ga. App. 326 (355 SE2d 446) (1987) (a one-inch rise in concrete). However, that one inspecting a post-fall scene can observe a hazard from a standing position is not dispositive of whether or not the injured invitee was exercising ordinary care for personal safety before the fall. *Thompson v. Regency Mall*, 209 Ga. App. 1, 3 (432 SE2d 230) (1993). The "plain view" doctrine is the equivalent of the "constructive knowledge" aspect of voluntary negligence on the part of the plaintiff. Voluntary negligence is applicable when the invitee knew or should have known of the hazard and proceeded (see p. 737, supra), and the "plain view" doctrine is applied to a hazard in plain view at a location where it is customarily found and can be expected to be, but which the invitee professes not to have seen prior to the fall. Even though the invitee had no actual knowledge of the hazard before being injured, the invitee should have known of the hazard's presence.

In light of the above, we conclude that we must disapprove of the appellate decisions which hold as a matter of law that an invitee's failure to see before falling the hazard which caused the invitee to fall constitutes a failure to exercise ordinary care. We also take issue with the Court of Appeals' holding in the case at bar that an invitee fails to exercise ordinary care for personal safety as a matter of law when the invitee admits she failed to look at the location where she subsequently placed her foot. Demanding as a matter of law that an invitee visually inspect each footfall requires an invitee to look continuously at the floor for defects, a task an invitee is not required to perform (*Food Giant v. Cooke*, supra) since the invitee is entitled to assume that the owner/occupier has exercised reasonable care to make the premises safe for the invitee and continues to exercise such care while the invitee remains on the premises. As reasonable minds can differ, taking into account all the circumstances at the time and place of the incident (*Ellington v. Tolar Constr. Co.*, supra), the evidence does not plainly, palpably, and indisputably lead to the conclusion that the invitee's placement of her foot on a site she had not previously inspected visually is an act which is a "'want of such prudence as the ordinarily careful person would use in a like situation.'" *Wynne v. Southern Bell*, supra, 159 Ga. at 629. Accordingly, we reverse the Court of Appeals' decision which affirmed the trial court's grant of summary judgment to the owner/occupier on the ground that the invitee as a matter of law did not exercise ordinary care for her personal safety.

2. The decision to disapprove several recent slip-and-fall appellate decisions does not, however, end our inquiry, as our examination

of slip-and-fall case law revealed other troubling aspects of the judicial treatment of the invitee's exercise of ordinary care for personal safety. We take this opportunity to address two of those issues: the "distraction doctrine" and the parties' respective burdens of proof.

(a) Stated succinctly, the distraction doctrine holds that "one is not bound to the same degree of care in discovering or apprehending danger in moments of stress or excitement or when the attention has been necessarily diverted. . . ." *Glover v. City Council of Augusta*, 83 Ga. App. 314, 316 (63 SE2d 422) (1951). See also *Alterman Foods v. Ligon*, supra, 246 Ga. at 623. Application of the doctrine has the effect of excusing an invitee from exercising the otherwise required degree of care because of the circumstances created by the purported distraction. *Stenhouse v. Winn Dixie Stores*, supra, 147 Ga. App. at 475. "[T]his is particularly true where the distraction is placed there by the defendant or where the defendant in the exercise of ordinary care should have anticipated that the distraction would occur." *Redding v. Sinclair Refining Co.*, 105 Ga. App. 375, 378 (124 SE2d 688) (1962). See also *Yeaple v. Grand Union Co.*, 207 Ga. App. 15 (427 SE2d 13) (1992); *Stenhouse v. Winn Dixie Stores*, supra, 147 Ga. App. at 475. Thus, when an invitee asserts that the hazard was not seen before the injury because the invitee's attention was diverted, the examination of whether the invitee exercised ordinary care for personal safety must take into account the circumstances surrounding the presence of the diversion. If the distraction has as its source the invitee, the invitee "can no more take the benefit of it to excuse his lack of care for his own safety than one who creates an emergency can excuse himself because of its existence." *Redding v. Sinclair Refining Co.*, supra, 105 Ga. App. at 379. A plaintiff's release of a cart was deemed a "self-induced" distraction in *Sullenberger v. Grand Union Co.*, 201 Ga. App. 194 (410 SE2d 381) (1991), as was a plaintiff's conversation with companions (*Wittenberg v. 450 Capitol Assoc.*, 207 Ga. App. 260 (427 SE2d 547) (1993)), and a tennis player's preoccupation with the game underway. *Anderson v. Dunwoody North Driving Club*, 176 Ga. App. 210 (335 SE2d 451) (1985). Looking at displayed merchandise or a store's aisle signage has been repeatedly found to constitute a self-induced distraction (*Piggly Wiggly Southern v. James*, supra, 225 Ga. App. 846; *Moore v. Kroger Co.*, 221 Ga. App. 520 (471 SE2d 916) (1996); *McIntyre v. Pic & Save Drug Co.*, 213 Ga. App. 58 (443 SE2d 874) (1994); *Foodmax v. Terry*, supra, 210 Ga. App. 510; *Riggs v. Great A & P Tea Co.*, supra, 205 Ga. App. 608. But see *Dill's Food City v. Johnson*, 219 Ga. App. 654 (466 SE2d 250) (1995); *Stenhouse v. Winn Dixie*, supra, 147 Ga. App. 473; and *Sears, Roebuck & Co. v. Chandler*, 152 Ga. App. 427, 429 (263 SE2d 171) (1979), where the appellate court noted that the merchant "should be cognizant that the usual shopper travels the aisles with his attention

directed toward the item he seeks and the prices of the displayed articles. The merchant deliberately attempts to draw the shopper's attention to selected items that he places on sale or features by signs, price cuts, or other displays." A restaurant's window sign was found to be a self-induced distraction in *Long John Silver's v. Coleman*, 223 Ga. App. 864 (479 SE2d 141) (1996) because the plaintiff chose to read the sign while walking. But see *Glover v. City Council of Augusta*, supra, 83 Ga. App. 314, where the court ruled that a store window display diverted a pedestrian's attention from the sidewalk obstacle into which the pedestrian walked.

However, "[w]here the distraction comes from without, and is of such nature as naturally to divert the [invitee], and also of such nature that the defendant might naturally have anticipated it, the result is different." *Redding v. Sinclair Refining Co.*, supra, 105 Ga. App. at 379. See, e.g., *Glover v. City Council of Augusta*, supra, 83 Ga. App. 314 (store window display a distraction to pedestrians), and *Magee v. Federated Dept. Stores*, 187 Ga. App. 620 (371 SE2d 99) (1988), and *Shackelford v. DeKalb Farmer's Market*, 180 Ga. App. 348 (349 SE2d 241) (1986), which each held that a pedestrian's possible confrontation with vehicular traffic could constitute a distraction.

In 1994, this Court issued *Barentine v. Kroger Co.*, 264 Ga. 224 (443 SE2d 485) (1994), in which the court, without mentioning the distraction doctrine, held that invitee Barentine presented evidence of the exercise of reasonable care for personal safety when he offered a specific reason for not looking at the floor at the site where he slipped and fell. Barentine explained that, while he was walking toward the lone open cash register, he was looking at the attendant who was not standing at the cash register so that he could advise him he was ready to make his purchase. Consequently, he did not see the puddle of clear liquid into which he placed his foot and fell. Citing *Food Giant v. Cooke*, supra, 186 Ga. App. 253, this Court ruled that "[t]his testimony is some evidence that Barentine exercised reasonable care for his own safety in approaching the check-out counter." *Barentine*, supra, 264 Ga. at 225. Since the *Barentine* decision, the Court of Appeals has taken divergent paths when discussing the distraction theory in conjunction with an invitee's exercise of ordinary care for personal safety. When an employee-generated conversation is proffered as the reason why the invitee was not looking at the floor, the plaintiff has been found, citing *Barantine*, to have presented evidence of the exercise of reasonable care and thereby precluded summary judgment for the defendant. See *J. H. Harvey*, 219 Ga. App. 697; *Sheriff's Best Buy v. Davis*, 215 Ga. App. 290. Recently, the Court of Appeals determined that *any* conversation between a customer and an employee, regardless of who initiated communication, is some evidence of the invitee's exercise of ordinary

care. *Carr v. Sears, Roebuck & Co.*, supra, 226 Ga. App. 768.

On the other hand, the appellate court took a more expansive view of *Barentine* in *Ferguson v. Scadron*, 227 Ga. App. 614 (489 SE2d 873) (1997), and ruled that the invitee's offer of a specific reason for not looking where he was going, regardless of the involvement of a store employee, created a jury question, since it was a circumstance where "the exercise of reasonable care demands a focus away from the floor." Id. at 616. But see *Freyer v. Silver*, 227 Ga. App. 253 (488 SE2d 728) (1997) (McMurray, J., dissenting), and *Parks-Nietzold v. J. C. Penney*, 227 Ga. App. 724 (490 SE2d 133) (1997) (McMurray, J., dissenting), where the proffer of a plausible reason why the invitee was not looking at the floor did not preclude summary judgment in favor of the defendant.

We take this opportunity to clarify our holding in *Barentine*: when an invitee explains that he was not looking at the location of the hazard which caused injury because of something in the control of the owner/occupier, which purported distraction is of such a nature that the defendant might have anticipated that it would divert an invitee's attention, e.g., the conduct of a store employee, the premises construction or configuration, or a merchandise display of such a nature that its presence would not have been anticipated by the invitee, the invitee has presented "some evidence that [the invitee] exercised reasonable care for [the invitee's] own safety. . . ." *Barentine v. Kroger*, supra, 264 Ga. at 225. It will then be for the factfinder to determine if the injury sustained was proximately caused by the defendant's negligence and whether the plaintiff failed to exercise reasonable care for personal safety.

(b) Our review of the recent developments in slip-and-fall case law has also led us to re-examine certain language in *Alterman Foods v. Ligon*, specifically the portion of that opinion which states that, "*in order to state a cause of action*," an invitee must show that an owner/occupier had actual or constructive knowledge of the foreign substance and that the invitee was without knowledge of the foreign substance or for some reason attributable to the defendant was prevented from discovering the foreign substance. 246 Ga. at 623. In effect, that statement placed upon the plaintiff the onus of proving both the defendant's knowledge and the plaintiff's lack of negligence in order to stay in court. At the time *Alterman Foods* was decided and for a decade thereafter, the unusually heavy burden with which the plaintiff was saddled was not overwhelming since a defendant moving for summary judgment had the burden of producing evidence which negated at least one essential element of the plaintiff's case. Id., 246 Ga. at 625. See also *Begin v. Ga. Championship Wrestling*, supra, 172 Ga. App. 293; *Southern Bell Tel. &c. Co. v. Beaver*, 120 Ga. App. 420 (2) (170 SE2d 737) (1969). As a result, a defendant who

moved for summary judgment achieved success by establishing either that it had no actual or constructive knowledge of the foreign substance, or that the plaintiff had been negligent by either confronting the hazard with actual knowledge of its presence or by failing to exercise ordinary care to ascertain the hazard's presence. See *Hilsman v. Kroger Co.*, 187 Ga. App. 570, 572 (370 SE2d 755) (1988) (Sognier, J., concurring specially):

> The rule has been, and continues to be, that on motion for summary judgment, regardless of which party would have the burden of proof at trial, if a material fact has been alleged in the complaint, can be reasonably drawn from the pleadings, or has been raised by the evidence placed in the record by any party, the defendant-movant has the burden of proving the non-existence of that fact and it is not until the movant carries its own burden that the burden then shifts to the plaintiff-respondent. [Cits.]

After this Court's decision in *Lau's Corp v. Haskins*, supra, 261 Ga. 491, the weighty burden placed on slip-and-fall plaintiffs by *Alterman Foods* was made manifest. Under *Lau's Corp.*, a defendant movant who did not bear the burden of proof at trial need no longer "affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the . . . record that there is an absence of evidence to support the nonmoving party's case." Id. at 491. Since the defendant had only to point to the deficiency in the plaintiff's case and no longer had to affirmatively negate by the presentation of evidence an essential element of the plaintiff's case, in order for a plaintiff to survive a motion for summary judgment, the plaintiff was required to establish both the defendant's knowledge of the foreign substance and the plaintiff's lack of negligence either before the defendant moved for summary judgment or in response to that motion. See, e.g., *Kroger Co. v. Farley*, 225 Ga. App. 766 (484 SE2d 742) (1997); *Coffey v. Wal-Mart Stores*, supra, 224 Ga. App. 824; *Blake v. Kroger Co.*, 224 Ga. App. 140 (480 SE2d 199) (1996), wherein it was stated, "Under *Lau's Corp.*, the defendant proprietor has no burden whatsoever on summary judgment to produce evidence to negate the plaintiff's theory of recovery"; *Brown v. Amerson*, 220 Ga. App. 318 (469 SE2d 723) (1996); *J. H. Harvey Co. v. Kinchen*, supra, 213 Ga. App. 868. Because the *Lau's Corp.* decision modified the practical application of the *Alterman Foods'* standard, we must modify *Alterman Foods* somewhat in order to regain balance in the allocation of the burden of proof.

A slip-and-fall plaintiff need not necessarily produce evidence which disproves the plaintiff's negligence to withstand a motion for

summary judgment — the burden of coming forward with such evidence arises only after it has been established or assumed the defendant had actual or constructive knowledge of the hazard, and the defendant presents evidence that the plaintiff's injuries were proximately caused either by the plaintiff's voluntary negligence, i.e., plaintiff's intentional and unreasonable exposure of self to a hazard of which plaintiff has knowledge, or by the plaintiff's casual negligence, i.e., the plaintiff's failure to exercise ordinary care for personal safety. In this way, the defendant has the evidentiary burden as to the issue of the plaintiff's negligence after it has been established or assumed for purposes of a motion for summary judgment that the defendant was negligent, i.e., that the defendant had actual or constructive knowledge of the existence of a hazard on its premises. Only after the defendant has produced evidence of the plaintiff's negligence does the plaintiff have the burden of producing rebuttal evidence that the invitee's failure to ascertain the existence of the hazard was due to actions or conditions within the control of the defendant, which actions or conditions are of such a nature that the defendant knew or should have known they would have diverted the invitee's attention from looking where he was going. By re-establishing the evidentiary burdens to where they were at the time *Alterman Foods* was decided, we lighten the load placed on plaintiffs by more recent judicial decisions, and place on defendants that which is normally required of a defendant — the establishment of a defense to liability.

In sum, we remind members of the judiciary that the "routine" issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed. We hold that an invitee's failure to exercise ordinary care is not established as a matter of law by the invitee's admission that he did not look at the site on which he placed his foot or that he could have seen the hazard had he visually examined the floor before taking the step which led to his downfall. Rather, the issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation. We further hold that an invitee presents some evidence of the exercise of reasonable care for personal safety when the invitee explains that something in the control of the owner/occupier and of such a nature that the owner/occupier knew or should have known of its distractive quality caused him not to look at the site of the hazard. Finally, we reaffirm that, in order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or

constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier. However, the plaintiff's evidentiary proof concerning the second prong is not shouldered until the defendant establishes negligence on the part of the plaintiff — i.e., that the plaintiff intentionally and unreasonably exposed self to a hazard of which the plaintiff knew or, in the exercise of ordinary care, should have known.

*Judgment reversed. All the Justices concur, except Fletcher, P. J., who concurs in Division 1 and in the judgment.*

HUNSTEIN, Justice, concurring.

While I fully join the majority's opinion, I would prefer to resolve slip and fall cases on the basis of pure comparative negligence. However, I recognize that resolution would require legislative change, which I urge the General Assembly to consider.

DECIDED DECEMBER 3, 1997.

*The Rushing Firm, F. Joseph Rushing,* for appellant.

*Webb, Carlock, Copeland, Semler & Stair, James R. Doyle II, Douglas A. Wilde,* for appellee.

*Reynolds & McArthur, Charles M. Cork III, Kunes & Kunes, G. Gerald Kunes,* amici curiae.