## A01A1501. MEDLEY v. HOME DEPOT, INC.
### (555 SE2d 736)

POPE, Presiding Judge.

Appellant Deedee Medley filed suit against Home Depot, Inc. for damages she claimed from a fall at a Home Depot store. Home Depot filed a motion for summary judgment, which the state court granted. Medley appeals, arguing that jury issues exist regarding the company's liability. Because we agree that factual issues remain regarding Home Depot's liability, we reverse.

The undisputed facts in the record show that Medley was shopping at Home Depot on June 9, 1997. She was looking for an extension cord and pushed her shopping cart halfway down an aisle, looking for the cord. She then left her cart and walked back up the aisle. At some point she asked Andrew Attaway, the department manager, for help in locating the product. When Medley still could not find it, she headed back to her shopping cart. She then slipped and fell in oil, which was on the floor. Medley testified that she did not see the oil or any liquid on the floor before she fell, but that a Home Depot employee told her at the scene that she had slipped in oil.

After her fall, Medley went to the hospital, where she was visited by the Home Depot loss prevention supervisor, Steven Hester, who indicated that some teenagers who had been in the store had poured the oil onto the floor. Although no oil was sold in the area in which Medley fell, an oil container was found on the floor near Medley's fall. The bottle had been deliberately punctured open, as if with a screwdriver, and it appeared that the oil had been deliberately poured onto the floor. The bottle containing the rest of the oil had been thrown between some boxes on the side of the aisle.

Hester stated that before Medley fell, he was aware of three teenagers who were running through the store playing hide and seek. He stated that these young people were "just horseplaying a lit-

tle bit." Hester testified that he knew these teens were not shoppers; that they were also playing tag; and that they were just joking around with each other. He said that they looked like they were "killing time." He recalled that the situation "hadn't gotten to the point where I was going to throw them out of the store." Hester said he had seen the teens once or twice about eight to ten minutes before Medley's fall. Hester was "keeping an eye on them," while doing other work. He recalled that he was "to the point where I was telling them to find their parents and leave or behave." Hester said that he knew to make sure that "they didn't get out of hand," so he was monitoring the teens' behavior.

The record contains evidence that another shopper both heard and saw the teenagers in the aisle in which Medley fell, right before her fall. This witness also heard something being thrown onto a shelf. There was also evidence that right before Medley's fall, the teens were in the aisle where the store keeps oil similar to that in which Medley slipped.

Attaway, the department manager, testified at his deposition about the "non-shoppers" who were in the store the day of Medley's fall. He stated that these teens regularly came to the store to play. He testified that they had previously messed things up and pulled things off shelves. Specifically, he stated: "[t]hey always come in and do that. It's a regular occurrence on Friday afternoons." He further stated that kids had previously spilled things in the store and that Home Depot knew that the teenagers might spill substances that could be a hazard to shoppers. Attaway stated that the Home Depot policy was to monitor these teens so that they did not spill oil or cause any kind of hazard to other shoppers. Furthermore, he stated that the Home Depot policy was to ascertain whether they were non-shoppers who were causing mischief and to ask them to leave. Attaway stated that if Hester saw the teens playing hide and seek, to comply with the Home Depot policy, Hester should have asked them to leave.

Attaway testified that Hester knew that the teenagers were in the store and that Hester had been following the teenagers around the store immediately before the incident. Attaway stated that Hester was searching for the teenagers "because they moved pretty quickly." Attaway stated that pursuant to Home Depot's policy, after recognizing the teens as nonshoppers, Hester should have asked them to leave. Attaway stated that if Hester saw the teens, knew that they were causing trouble, and did not ask them to leave, this would violate Home Depot policy.

Home Depot requires that the department supervisor patrol the aisles to make sure that the aisles are clear. Attaway testified that on the incident date, there were five aisles in the electrical department

of the Home Depot store with four Home Depot employees working in that area. Attaway testified that he had inspected the area in which Medley fell within five minutes of her fall and had not seen any oil. In fact, there was evidence that he was only about 20 yards away from the spot where Medley fell when he received the call about the incident. Nevertheless, Attaway never saw or heard the teens in the aisle where Medley fell.

In determining whether a jury issue remains in this case, we first turn to *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (1) (493 SE2d 403) (1997), which stated:

> [A]s a general proposition[,] issues of negligence, contributory negligence and lack of ordinary care for one's own safety are not susceptible of summary adjudication but should be resolved by trial in the ordinary manner. The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable.

(Citations and punctuation omitted.) Id.

With respect to the particular duty of Home Depot as the owner/occupier, the rule is that:

> One who owns or occupies land and by express or implied invitation[ ] induces or leads others to come upon his premise for any lawful purpose[ ] is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe. OCGA § 51-3-1. While not an insurer of the invitee's safety, the owner/occupier is required to exercise ordinary care to protect the invitee from unreasonable risks of harm of which the owner/occupier has superior knowledge. The owner/occupier owes persons invited to enter the premises a duty of ordinary care to have the premises in a reasonably safe condition and not to expose the invitees to unreasonable risk or to lead them into a dangerous trap. The owner/occupier is not required to warrant the safety of all persons from all things, but to exercise the diligence toward making the premises safe that a good business person is accustomed to use in such matters. This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises.

(Citations and punctuation omitted.) *Robinson v. Kroger Co.*, 268 Ga. at 740 (1).

This court restated the basis of the proprietor's liability in *Denham v. Young Men's Christian Assn. &c.*, 231 Ga. App. 197, 199 (499 SE2d 94) (1998):

> The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. Thus, the basis of the proprietor's liability is his superior knowledge, and if his invitee knows of the condition or hazard, there is no duty on the part of the proprietor to warn the invitee and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does.

(Citations and punctuation omitted.) Id.

In this case, construing the evidence most favorably for Medley, we conclude that jury issues remain regarding Home Depot's liability. There was evidence that Home Depot employees knew that these teenaged nonshoppers regularly came into the store to play and that they had previously pulled items off the shelves and had spilled things. Thus, there was evidence that it was foreseeable that these teens would spill substances on the floor which would be hazardous to shoppers. A jury question remains regarding whether Home Depot was liable because of the foreseeability of Medley's fall. See generally *Walker v. Hammock*, 246 Ga. App. 640, 642 (1) (541 SE2d 439) (2000) (an intervening criminal act of a third party, without which the injury would not have occurred, will not break the causal connection between the defendants' negligence and the injury if it was a foreseeable consequence of the defendants' conduct).[1]

There was also evidence that Home Depot failed to follow its own policies when Hester did not ask the nonshopping teens to leave after he found them playing hide and seek in the store. Whether Hester's failure to more closely monitor these nonshopping teens is negligence is a jury issue. Thus, given the evidence that Home Depot failed to

---

[1] Although we are aware that there are similarities between the analysis used in this case and in those cases involving intervening criminal acts of third parties, we are also mindful that there are analytical differences. It is necessary in both cases to present evidence that the risk of danger was foreseeable. See *Post Properties v. Doe*, 230 Ga. App. 34 (495 SE2d 573) (1997). In the context of the instant case, it is not necessary that the foreseeability element be predicated on evidence that another shopper had been injured after nonshopping teens created a hazard. The fact that there was evidence that nonshoppers had previously *created* the hazard combined with the evidence that Home Depot had failed to follow its own policies was sufficient in this case to create a jury issue.

follow its own store policies and that Home Depot knew that non-shoppers had previously spilled items which constituted hazards on the floor, we conclude that there is a jury issue as to whether Home Depot was negligent in this case. This close case "falls within the general rule: Such matters are generally not susceptible of summary adjudication, and . . . summary judgment is granted only when the evidence is plain, palpable, and undisputed." (Citation and punctuation omitted.) *Sadtler v. Winn-Dixie Stores,* 230 Ga. App. 731, 733 (498 SE2d 101) (1998).

*Judgment reversed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 18, 2001 —
RECONSIDERATION DENIED NOVEMBER 13, 2001 —

*Kenneth M. Sissel,* for appellant.

*Mozley, Finlayson & Loggins, Carroll G. Jester, Jr., Theo M. Sereebutra,* for appellee.