S11G1263. THE LANDINGS ASSOCIATION, INC. v. WILLIAMS et al.
S11G1277. THE LANDINGS CLUB, INC. v. WILLIAMS et al.
(728 SE2d 577)

MELTON, Justice.

In *The Landings Association, Inc. v. Williams,* 309 Ga. App. 321 (711 SE2d 294) (2011), the Court of Appeals held that the trial court properly denied in part motions for summary judgment brought by The Landings Association, Inc. and The Landings Club, Inc., finding that a question of fact remained as to whether The Landings entities failed, pursuant to the law of premises liability, to take reasonable steps to protect Gwyneth Williams from being attacked and killed by an alligator in the planned residential community and golf club owned and/or managed by The Landings entities.[1] We granted certiorari to determine whether the Court of Appeals erred in reaching this conclusion. Because the record shows that Williams had equal knowledge of the threat of alligators within the community, we reverse.

As is relevant to our holding, the facts, in the light most favorable to Williams, show that, at the time of the alligator attack, Williams was house-sitting for her daughter and son-in-law at The Landings, a planned residential development with a golf course located on Skidaway Island off the Georgia coast. Before The Landings was developed, the land within and surrounding its boundaries was largely marsh, where indigenous alligators lived and thrived. In order to develop the property, The Landings entities installed a lagoon system which allowed enough drainage to create an area suitable for a residential development. After the project was completed in the 1970s, the indigenous alligators subsequently began to move in and out of The Landings through its lagoon systems.

Although alligators inhabited the area of The Landings before and after its establishment, no person had ever been attacked until the night of October 5, 2007, when Williams, who was 83 at the time,

---

[1] The Landings Association owns and manages the common areas of the residential area, and The Landings Club owns and manages the golf course.

went for a walk near one of the lagoons near her daughter's home some time after 6:00 p.m. The following morning, Williams' body was found floating in the lagoon.[2] Williams' right foot and both forearms had been bitten off. Later, an eight-foot alligator was caught in the same lagoon, and, after the alligator was killed, parts of Williams' body were found in its stomach.

The record shows that, prior to the attack, Williams was aware that the property was inhabited by alligators. Williams' son-in-law testified that, on at least one occasion, he was driving with Williams on property in The Landings when he stopped the car to allow Williams to look at an alligator. Williams' son-in-law also testified that Williams was, in fact, aware that there were alligators in the lagoons at The Landings and that he believed that Williams had a "normal" respect for wild animals. When asked whether he had ever discussed how to behave around wild alligators with Williams, her son-in-law responded: "No. There was never — quite frankly, there was never any reason to. I mean she was an intelligent person. She would — there was no question in my mind that — I guess I have to answer that as it's not like talking to a five year old child . . . stay away from alligators." In addition, Williams' son recalled a similar instance when he stopped the car to allow his mother to look at an alligator. At that time Williams mentioned that she did not like alligators and did not want to go anywhere near them.

Generally, in premises liability cases,

[a]fter [*Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997)], to survive a motion for summary judgment, a plaintiff must come forward with evidence that, viewed in the most favorable light, would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard. At that point, the burden of production shifts to the defendant to produce evidence that the plaintiff's injury was caused by his or her own voluntary negligence (intentional disregard of a known risk) or causal negligence (failure to exercise ordinary care for one's personal safety). If the defendant succeeds in doing so, the burden of production shifts back to the plaintiff to come forward with evidence that creates a genuine dispute of fact on the question of voluntary or causal negligence by the plaintiff or tends to show that any such negligence resulted

---

[2] One side of the lagoon was a park-like area owned by The Landings Association, and the other side of the lagoon was part of the golf course owned by The Landings Club.

from the defendant's own actions or conditions under the defendant's control. [Id. at 746-749.]

(Footnote omitted.) *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 444-445 (2) (679 SE2d 25) (2009). See also OCGA § 51-3-1.

Furthermore, it must be remembered that

" '[t]he true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted.' [Cits.] One who is familiar with the premises cannot rely for recovery upon the negligence of the defendant in failing to correct a patent defect where such party had equal means with the defendant of discovering it or equal knowledge of its existence." [Cits.] [*McKnight v. Guffin*, 118 Ga. App. 168, 169 (162 SE2d 743) (1968).]

*Atlanta Gas Light Co. v. Gresham*, 260 Ga. 391, 392 (3) (394 SE2d 345) (1990). However, " '[t]he trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable. (Cit.)' [Cits.]" *Robinson*, supra, 268 Ga. at 739 (1).

In this case, testimony shows that Williams was aware that wild alligators were present around The Landings and in the lagoons. Therefore, she had knowledge equal to The Landings entities about the presence of alligators in the community. In addition, the record shows that Williams knew that the wild alligators were dangerous, saying herself that she would not want to be anywhere near them. Nonetheless, Williams chose to go for a walk at night near a lagoon in a community in which she knew wild alligators were present. This act indisputably shows that Williams either knowingly assumed the risks of walking in areas inhabited by wild alligators or failed to exercise ordinary care by doing so. Under these circumstances, the trial court should have granted the motions for summary judgment brought by the Landings entities regarding Williams' premises liability claims.

The dissent, like the Court of Appeals, attempts to avoid this conclusion by arguing that summary judgment for The Landings is precluded because there is no "competent evidence that the decedent knew there were alligators over seven feet in size living in the community or living in the lagoon in which [Williams'] body was found." While there is no doubt that Williams' death was a tragic

event, Williams was not incompetent. A reasonable adult who is not disabled understands that small alligators have large parents and are capable of moving from one lagoon to another, and such an adult, therefore, assumes the risk of an alligator attack when, knowing that wild alligators are present in a community, walks near a lagoon in that community after dark.

*Judgment reversed. All the Justices concur, except Carley, C. J., Hunstein, P. J., and Benham, J., who dissent.*

BENHAM, Justice, dissenting.

I write because I respectfully disagree with the majority's opinion reversing the decision of the Court of Appeals to allow this premises liability case to go to a jury. The majority reasons that appellees' claims cannot survive summary judgment because the decedent had equal knowledge, as compared to appellants, that there were alligators in and around The Landings community. Premises liability cases, however, cannot be resolved on summary judgment unless "the evidence is plain, palpable, and undisputed." *American Multi-Cinema, Inc. v. Brown,* 285 Ga. 442 (2) (679 SE2d 25) (2009) (quoting *Robinson v. Kroger Co.,* 268 Ga. 735, 748 (493 SE2d 403) (1997)). In this case, the Court of Appeals was correct when it affirmed the trial court's denial of summary judgment to appellants because the evidence was not plain, palpable, and undisputed.

Notably absent from the majority's opinion are facts which, if construed in appellees' favor, require the denial of appellants' motions for summary judgment. For example, the Landings Association had an advertised policy that it removed from the 151 lagoons in the community alligators which were seven feet long or larger and/or alligators which were aggressive toward humans or pets;[3] the appellants did not patrol or inspect the lagoons in order to remove large or aggressive alligators according to its policy, but rather relied on residents and employees to report said animals; and appellants did not post signs near the lagoons warning guests about alligators. See *The Landings Association, Inc. v. Williams,* 309 Ga. App. 321, 322-324 (711 SE2d 294) (2011). An expert opined that the over eight foot long, 130 pound alligator that attacked the decedent had likely been in the lagoon where the decedent's body was found for some time because such mature alligators tend to be territorial and nest. There was also evidence in the record that the decedent called for help during the attack, but that appellants' security forces, which were not trained in

---

[3] Alligators over eight feet long are more prone to be aggressive toward and/or attack humans. *The Landings Association, Inc. v. Williams,* 309 Ga. App. 321, 323 (711 SE2d 294) (2011).

dealing with alligators, responded to the wrong location and then stopped investigating, assuming that the sounds in question were bird calls. While there was some testimony that the decedent had seen at least one alligator standing on the side of the road in The Landings, the Court of Appeals concluded in its de novo review that there was no "competent evidence" that the decedent knew there were alligators over seven feet in size living in the community or living in the lagoon in which her body was found. Id. at 323-324.

> [I]ssues of negligence, contributory negligence and lack of care for one's own safety are not susceptible of summary adjudication . . . but should be resolved by trial in the ordinary manner. [Cit.] . . . Where reasonable minds can differ as to the conclusion to be reached with regard to questions of whether an owner/occupier breached the duty of care to invitees and whether an invitee exercised reasonable care for personal safety, summary adjudication is not appropriate. [Cit.]

*Robinson v. Kroger Co.*, supra, 268 Ga. at 739-740. Based on the facts presented at the time of summary judgment in this case, reasonable minds could differ as to the essential elements of appellees' premises liability claim. Indeed, there are very specific questions in this case that must go to a jury: whether decedent knew that large and aggressive alligators were living on the premises and in the lagoon in which her body was discovered;[4] and whether appellants exercised reasonable care in inspecting and keeping the premises safe from alligators — in particular, alligators that were over seven feet long and alligators that were aggressive toward humans and pets as per appellants' removal policy. Rather than allowing this evidence to be reviewed by a factfinder, the majority opinion bars appellees' premises liability claim simply because the decedent once observed an alligator standing on the roadside. Such a result disregards all the other factual circumstances in the case and is not in keeping with our jurisprudence. See id. at 740 ("all the circumstances at the time and place of the incident" must be considered). Accordingly, I would affirm the judgment of the Court of Appeals and allow the premises liability claim to be tried before a jury.

---

[4] See, e.g., *George v. United States*, 735 FSupp. 1524, 1535 (M.D. Ala. 1990) (fact that appellant knew there were alligators in a recreational swimming pond did not mean appellant was aware of the eleven-foot alligator that attacked him).

I am authorized to state that Chief Justice Carley and Presiding Justice Hunstein join in this dissent.

DECIDED JUNE 18, 2012 —
RECONSIDERATION DENIED JULY 26, 2012.

*Barrow & Ballew, Walter W. Ballew III*, for The Landings Association, Inc.

*Savage & Turner, Robert B. Turner, Kathryn H. Pinckney, Hasty, Pope & Ball, Marion T. Pope, Jr., Franklin, Taulbee, Rushing, Snipes & Marsh, Daniel B. Snipes, Gilbert, Harrell, Sumerford & Martin, Mark D. Johnson, David M. Conner*, for Williams et al.

*Forbes, Foster & Pool, Morton G. Forbes, Johnny A. Foster*, for The Landings Club, Inc.

*McNamee, Lochner, Titus & Williams, Glen K. Williams*, amicus curiae.