**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**October 2, 2012**

# In the Court of Appeals of Georgia

A12A1295. THOMAS v. MCMILLAN.

BOGGS, Judge.

In this premises liability case arising out of a deck collapse, Theodore Thomas appeals from the trial court's grant of summary judgment to Thomas McMillan, the homeowner. Thomas contends that genuine issues of fact exist as to whether McMillan had superior knowledge of defects in the deck. We disagree and therefore affirm.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant or denial of summary judgment, we apply a de novo standard of review and view the evidence, and all reasonable conclusions and

inferences drawn from it, in the light most favorable to the nonmovant. *Hood v. Todd*, 287 Ga. 164, 165 (695 SE2d 31) (2010).

So viewed, the record shows that at the time of the deck collapse on November 18, 2007, Thomas was checking McMillan's home "inside and outside" while McMillan was out of town. While Thomas was standing on the deck, he heard a crack, the deck dropped halfway to the ground and paused, before falling completely to the ground. Thomas was "not sure" from which direction the cracking sound originated, and he did not look at the deck after it fell to determine how or why the deck fell. At no time before the deck collapse did Thomas notice anything about the deck that caused him concern. A couple of days after the accident, McMillan told Thomas he did not understand why it fell, noting that he would sleep on the deck two or three times a week. Thomas testified that he had no reason to believe that McMillan knew anything was wrong with the deck.

Before purchasing the new home, McMillan reviewed a home inspection report prepared on his behalf dated June 2, 2007. One section of the report was labeled "Deck/Porch," and the inspector indicated that the "overall condition" of the deck was "Adequate," as opposed to "Fair," "Poor," "Substandard Installation, Workmanship," or "Hazardous Condition." Additionally, the inspector left blank two

2

boxes at the top of the page labeled "Structural Evaluation and Repairs Recommended" and "Updating and/or Replacing Recommended." In a subsection titled "Ledger" of the "Deck/Porch" section of the report, the inspector noted that bolting and flashing were not visible and were recommended. Under the "observation" subsection of "Ledger," the inspector did not circle any of the following options "Visible Rot / Susceptible Water Infiltration / Siding Damaged / Not Properly Secured / Improperly Secured to Cantilevered Joist." In the "Additional Comments" section at the end of the "Deck" section of the report, the inspector handwrote: "Flashing & bolting recommended at ledger."

Before Thomas' injury, McMillan provided a copy of the inspection report to Shepherd and Young Construction, LLC, the entity from which McMillan purchased the new home. The home was built by another entity, PZDM, and the plans for the home did not include a deck. William Shepherd, a principal of Shepherd and Young Construction, testified that he hired a framer, James Hall,[1] to add a deck to the home to help it sell based upon the recommendation of a realtor. The handwritten punch list at the end of McMillan's inspection report that was provided to Shepherd and Young

_____

[1] Shepherd had previously used Hall to build a free-standing garage at his personal home.

3

did not include any mention of bolting of the ledger for the deck. With regard to the deck it included only "[r]eplace damaged picket at left side wood railing of rear deck #24 from entry door" and "[p]roperly attach wood railing at bottom section of rear wood deck to wood post."

Shepherd admitted in his deposition that he had no training in the construction business and that he had no knowledge of building codes applicable to decks. According to Shepherd, the framer who had constructed the deck looked at it after the collapse and "didn't say a whole lot" other than "something to the effect that some of it wasn't done the way he intended . . . he talked about the post, some cement being in the post on the ground level . . . he said the part where it was attached to the house was done right." When asked whether he knew why the deck collapsed, Shepherd testified, "Not really. Just something was wrong." When asked whether he believed the deck was properly attached to the house, Shepherd replied, "Let's see, it was up there - - no. 'Cause three months it fell. I'll say, you asked me was it attached right, I'm not sure about which part had to do with the falling, you know, what I mean. You said attached to the house, it could have been ground level. . . ." Finally, Shepherd testified that McMillan told him after the accident that he "knew something wasn't right about the deck."

4

Thomas subsequently filed a complaint against McMillan, Shepherd and Young Construction, LLC, and Hall for his injuries. McMillan moved for summary judgment in his favor, which the trial court granted based upon its conclusion that Thomas failed to show "McMillan's superior knowledge of a defect causing the harm to [Thomas]." The evidence before the trial court includes only written discovery responses and the depositions of Shepherd, Dan Young (the other principal of Shepherd and Young, who provided no additional information about the deck), and Thomas. It does not include any depositions or affidavits from McMillan, Hall (the framer who constructed the deck), the inspector who prepared the inspection report for McMillan, or an expert.

On appeal, Thomas contends that the inspection report, Shepherd's testimony about the cause of the collapse, and McMillan's admission that he "knew something wasn't right about the deck" create genuine issues of fact with regard to McMillan's superior knowledge of the defect. We disagree.

In premises liability cases, "to survive a motion for summary judgment, a plaintiff must come forward with evidence that, viewed in the most favorable light, would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard." (Citations and punctuation omitted.) *Landings*

*Assn. v. Williams*, 291 Ga. 397 (728 SE2d 577) (2012). Additionally, "[t]he true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted." (Citations and punctuation omitted.) Id.

In this case, Thomas cannot meet his burden of proving McMillan's actual or constructive knowledge of the defect that caused Thomas' injury. See *Silman v. Assoc. Bellmease*, 294 Ga. App. 764, 766 (2) (669 SE2d 663) (2008); *Wingo v. Harrison*, 268 Ga. App. 156, 160 (601 SE2d 507) (2004). First, the record before us does not adequately establish that the deck in fact had inadequate bolting or flashing that could have caused the deck to collapse. Second, the inspection report did not provide McMillan with actual or constructive notice of a dangerous defect in the deck. The inspector listed the deck's overall condition as adequate, failed to mark two boxes recommending "structural evaluation and repairs" or "updating and/or replacing," and the inspector did not circle listed options of "not properly secured" or "improperly secured to cantilevered joist." The section regarding the ledger merely noted that bolting and flashing were not visible and were recommended. And while

6

the comments section in the deck portion of the report recommended bolting and flashing at the ledger, the report did not explain that their absence would pose a safety hazard. Finally, McMillan's alleged admission that he "knew something wasn't right about the deck" is too general to establish that McMillan had superior knowledge of the unspecified defect in the deck that caused Thomas' injury. See *Dunaway v. Kaylor*, 127 Ga. App. 586, 587 (194 SE2d 264) (1972) (father's admission that he knew he was going to have problems with his son no basis for inference of previous knowledge of violent propensities; any such inference "pure speculation and conjecture"). The trial court therefore did not err by granting summary judgment to McMillan.

*Judgment affirmed. Doyle, P. J. and Andrews, J., concur.*