MILLER, Presiding Judge,
concurring in part and dissenting in part.
I must respectfully dissent to Division 1 of the majority’s opinion because there is a genuine issue of material fact for the jury to resolve on the element of causation. Although the trial court found that Hercules breached its duty to George, the trial court’s order clearly made no finding as to causation. Where a jury question remains, summary judgment is improper. Consequently, I would reverse the trial court’s judgment.
George’s apartment complex, The Villas, was infected by rampant crime. These crimes included a homicide, a sexual assault, armed robberies, and 66 break-ins to both occupied and vacant units. Hercules’s management was aware of each of these crimes at the apartment complex, yet it still failed to notify the tenants that many of these crimes occurred.
*856 Moreover, despite these numerous crimes, Hercules’s management refused to employ security guards after hours or overnight, when the crimes were most prevalent, and it even rejected its own on-site manager’s specific request for additional security In fact, Hercules’s management failed to tell its tenants that the security guards who were present were hired only for the purpose of protecting the property in units that were being refurbished, not for the purpose of protecting tenants and guests.
Although the apartment complex was a “gated community,” the front “gate” was only a 1x6 inch board, which did not deter foot traffic. Moreover, even though Hercules’s management knew that the property adjacent to the apartment complex had a high crime rate, and that the areas behind the complex and along its fence line were “at the mercy” of criminals, the management only sporadically repaired the frequent holes in the fence. Importantly, the night before George’s home invasion, an armed robber fled through a hole in the fence after robbing someone, and a police report completed after George was shot showed that the suspects fled on foot toward a road adjacent to one of the holes in the fence. Although there were security cameras on the property, the cameras were positioned too high to distinguish faces or license plates in the recordings, and for reasons unknown Hercules had rejected a former property manager’s request to fix that problem.
Given the evidence in the record that Hercules’s management knew that its security measures had failed to remedy the rampant crime at the apartment complex, this Court should not conclude that this is a “clear and indisputable case” that removes the issue of causation from the jury’s purview. See Woodbury v. Whitmire, 246 Ga. 349, 350 (1) (271 SE2d 491) (1980). Accordingly, the majority’s conclusion that summary judgment is proper on this ground as to George’s claims for negligence, nuisance, and punitive damages is legal error.
This conclusion does not end this Court’s inquiry, however, because the trial court based its ruling on its erroneous finding that George assumed the risk of harm as a matter of law. With regard to assumption of the risk, Georgia law is clear that “[i]f the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant’s negligence, he is not entitled to recover.” OCGA § 51-11-7.
The important focus in this analysis is the scope of George’s knowledge of the risk he faced at the apartment complex. For George’s recovery to be barred, he must have had knowledge of “the specific, particular risk of harm associated with the activity or condition” that proximately caused his injury. (Citation and punctuation omitted; emphasis supplied.) Monitronics Intl. v. Veasley, 323 Ga. *857 App. 126, 139 (4) (746 SE2d 793) (2013). As with causation, assumption of risk is ordinarily a question for the jury. Desai v. Silver Dollar City, 229 Ga. App. 160, 166 (5) (493 SE2d 540) (1997).
Here, the trial court erred in finding that George assumed the risk of harm as a matter of law. Certainly, a jury could find that George’s decision to open the door that night bars his claims; however, a jury could also find that George did not appreciate the specific risk of armed home invaders when he decided to answer the door to his own home in response to someone knocking. Thus, whether George assumed the risk of harm is for the jury to decide.
The trial court’s reliance on Landings Assn. v. Williams, 291 Ga. 397, 399 (728 SE2d 577) (2012) is misplaced because that case is entirely distinguishable on its facts. In Landings, our Supreme Court relied on the plaintiff’s knowledge that alligators are dangerous to conclude that the plaintiff knowingly assumed the risk of harm by walking around areas she knew were inhabited by wild alligators. Id.
Here, George was injured when he opened the door to his own home and was shot by unknown criminals. To conclude that George assumed the specific risk of harm would establish a standard in which a person opening the door to his own home is, as a matter of law, at the mercy of whomever lurks on the other side. This is not the current state of the law in Georgia, and thus the trial court erred in granting summary judgment on this ground.
For the above reasons, the trial court’s order must be reversed. Accordingly, I respectfully dissent to Division 1 of the majority opinion.
I am authorized to state that Presiding Judge Barnes, Presiding Judge Phipps, and Judge McFadden join in this dissent.